Everest M. FRIEND, Jr., et al., Appellants,

v.

MARYLAND CASUALTY COMPANY, Appellee.

No. 15618.

Court of Civil Appeals of Texas.

Fort Worth.

May 6, 1955.

Anderson & Latham and Henry J. Anderson, Wichita Falls, for appellants.

Jones, Parish & Fillmore and Clyde Fillmore, Wichita Falls, for appellee.

BOYD, Justice.

Appellee Maryland Casualty Company brought this suit against appellants Everest M. Friend, Jr., and J. E. Friend for $682.79, which amount appellee had paid for repairs to a Cadillac automobile belonging to its assured, Mrs. Carter McGregor. Appellee alleged that the car had been left by the assured with appellants for storage under a bailment contract, and had been taken from appellants' storage garage and wrecked. It was stipulated that appellee carried the insurance; that the car was damaged to the extent of $682.79; and that appellee paid that amount for repairs. Upon a jury verdict, judgment was rendered for appellee as prayed for.

By points of error, appellants contend that there was no evidence, or sufficient evidence, to support a finding that the car was delivered to appellants, and that therefore the existence of a bailment contract was not established.

The Marchman Hotel Storage Garage was a business in Wichita Falls owned by appellants as partners, and operated for the partnership by appellant J. E. Friend. On September 28, 1951, Mrs. McGregor drove the car to the storage garage for the purpose of parking it while she did some errands in town. Mrs. McGregor had been leaving her car there about once a week for a year or more. She never received a storage ticket, nor did she ever pay the storage until she called for the car. On the occasion in question, at about 10:30 a. m., Mrs. McGregor drove the car to the en-

trance to the garage; the entrance was somewhat congested with cars; she did not try to drive inside, but stopped at the entrance, and a colored boy came out and took possession of her car; she noticed that the boy got into the car, but she did not notice whether he drove it into the garage. She told the boy that she wanted to park the car while she went to a beauty parlor, and the boy asked her how long she would be gone. In about one and one-half hours Mrs. McGregor returned and learned that the car had been taken away and damaged. She testified that "Mr. Friend" said to her, " 'Mrs. McGregor, I'm sorry to tell you that the colored boy took your car out and had a wreck.' "

Appellants insist that the evidence is insufficient to show that the boy to whom Mrs. McGregor delivered the car was in the employ of appellants, or that the car was ever in the garage on the day in question, or was otherwise in the possession of appellants.

Mrs. McGregor did not recall having seen this particular boy at the garage before this date, and she had not seen him since. It was uncontroverted, however, that a colored boy named Leon Blue was then employed at the garage, and had been on duty that very morning, and up until a very few minutes, at most, before Mrs. McGregor drove to the garage. Appellant J. E. Friend testified that Blue had been working at the garage for only two or three days or perhaps a week before the day in question; that the witness left the place of business for about thirty minutes that morning; that Blue was there and on duty when witness left; that Blue had authority to go out and take Mrs. McGregor's car and park it; that when witness returned he noticed that Blue was gone; that about 11:30 that morning "the Police called me and said that he had had a wreck;" that witness went to the place where they said the wreck occurred;

"Q. Why did you go down there? A. Because they said that there was

this boy that worked for me and a car from the storage garage.

"Q. And when you got down there what did you find? A. The colored boy was sitting in the Police car with a Policeman. The Cadillac was sitting there in the street and a taxicab right in front of it. The man from the taxicab company was down there in another cab.

"Q. Did you see the McGregor Cadillac? A. I saw the Cadillac the boy was driving and which, I presumed; I didn't know at the time whose car it was. * * * We looked at the registration slip on the steering wheel and it was registered to Mrs. McGregor. * * * someone had already called the wrecker from Pistocco's to pick it up and I talked to Blue and talked to the Policeman and talked to the taximan * * *.

"Q. * * * he asked you to admit that you refused to file or press criminal charges against Leon Blue for removing the Cadillac from your storage garage. Now, did you refuse to press criminal charges against him? A. I came down and asked, I believe it was the District Attorney, what I could do in a case of that kind and he said, if any criminal charges were filed, Mrs. McGregor would have to file them. And Mrs. McGregor had already asked me not to file any charges against the colored boy."

Friend further testified that Blue returned to the garage after he had been released by the officers and wanted to go to work, and that witness refused to permit him to work, and that Blue has not worked at the garage since that time.

Under appropriate instructions, the jury found that Mrs. McGregor stored her car with appellants under a contract of bailment. The jurors thought that Leon Blue took the car from Mrs. McGregor and drove it from the garage; the trial judge evidently thought there was evidence to

874

support the finding, for he entered judgment upon it. We are of the opinion that the evidence was sufficient to support the finding and the judgment.

The judgment is affirmed.